# In the United States Court of Federal Claims

No. 14-1129C
(Filed:  June 1, 2015)
**\*Opinion originally filed under seal on May 11, 2015**

|  |  |  |
|---|---|---|
| ROTECH HEALTHCARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Bid Protest; Technical Evaluation; Past |
| THE UNITED STATES, | ) | Performance Evaluation; Price |
| | ) | Evaluation; Deference to Agency; |
| Defendant, | ) | Requirements in the Solicitation; |
| | ) | Denial of Motion to Supplement |
| and | ) | Administrative Record |
| | ) | |
| COMMUNITY SURGICAL | ) | |
| SUPPLY, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

    *Kyle R. Jefcoat,* Washington, DC, for plaintiff.  *David. R. Hazelton*, *Dean W. Baxtresser*, *Kellyn M. Goler* and *Yannick B. Morgan*, Washington, DC, of counsel.

    *Christopher K. Wimbush*, Civil Division, United States Department of Justice, Washington, DC, with whom were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Deborah A. Bynum*, Assistant Director. *Jeanne S. Morris,* Office of Regional Counsel, U.S. Department of Veterans Affairs, Leeds, MA, of counsel.

    *Daniel R. Forman*, Washington, DC, for defendant-intervenor.  *Joshua I. Skora* and *Lisa K. Smith*, Amarillo, TX, of counsel.

## OPINION ON CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

**FIRESTONE**, *Judge*.

Plaintiff Rotech Healthcare, Inc. ("Rotech"), the incumbent contractor, is challenging the decision of defendant Department of Veterans' Affairs ("VA," "agency," or "government") to award a contract to defendant-intervenor Community Surgical Supply, Inc. ("CSS").[1]   Pursuant to Rule 52.1(c)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), the parties have filed cross-motions for judgment on the administrative record.  Rotech has also filed a motion to supplement the administrative record.

This case concerns a contract to provide home health care services in New England.  During the evaluation process, the agency awarded Rotech and CSS the same rating on the Technical and Past Performance factors, and CSS's bid was approximately $5.6 million less than Rotech's final bid.  Therefore, the VA found that CSS proposal represented the best value to the government and awarded the contract to CSS.  Rotech argues that CSS's ratings on the Technical and Past Performance factors were unsupported by CSS's experience and bid, and that the agency did not follow the terms of the solicitation in giving CSS its high ratings on those factors.  In particular, Rotech argues that CSS would not have been able to complete a transition in the time period specified by the contract, and therefore the company's ratings were unreasonable.  Rotech also argues that CSS's price was so low that it was unrealistic for the job.  Rotech asserts that the solicitation required the agency to perform a price realism analysis, and that the VA failed to perform such an analysis.

---

[1] The court will refer to CSS and the government collectively as "the defendants."

For the reasons that follow, the court now **GRANTS** the government and CSS's respective motions for judgment on the administrative record and **DENIES** Rotech's motion for judgment on the administrative record.  The record demonstrates that the VA acted reasonably and complied with the terms of the solicitation in its evaluation of CSS's bid.  The court also **DENIES** Rotech's motion to supplement the administrative record.  The documents Rotech seeks to add to the record, which only came into existence after the agency made its decision to award the contract to CSS, do not shed light on any issue this court must decide in this case, and thus are properly excluded.

I.   **FACTS**

  A.   **The Solicitation**

On January 17, 2014, the VA issued Request for Proposals ("RFP" or "the solicitation") No. VA241-14-R-0003 for a contract to provide home respiratory supplies and services to veterans and beneficiaries in all the states in New England, which is classified by the Veterans Integrated Service Network ("VISN") as geographical area No. 1, or "VISN 1."  AR 48.  The VISN 1 contractor is to run the VA's Home Respiratory Care Program, Pulmonary Section, Medical Service, at all VISN 1 facilities.  The VISN 1 contractor admits patients into the Home Respiratory Care Program after performing assessment of their clinical condition, furnishes home oxygen and respiratory equipment, conducts in-home pulmonary assessments and re-assessments by respiratory therapists, sets up and completes overnight oximetries, and provides documentation of patient education.  Id. at 52.  The RFP stated that the contractor "shall provide all transportation, labor, fuel, parts, and supervision for the furnishing of home respiratory care as identified

3

within the Statement of Work." Id.  The RFP contemplated the award of a five-year firm, fixed-price, indefinite quantity contract. Id. at 156.

The RFP specified that the contract would be awarded on a best value tradeoff basis, and proposals were to be evaluated under three factors: (1) Technical; (2) Past Performance; and (3) Price. Id. at 135.  The RFP explained that non-price factors, when combined, "are significantly more important than price," and stated that after all the factors are considered together the contract "may be awarded to other than the lowest priced offeror or other than to the highest technically rated proposal." Id. at 140. Though the evaluators were instructed to consider multiple subfactors when awarding a rating for the Past Performance and Technical factors, no ratings were to be given on the subfactor level, nor would an offeror receive a rating from any individual evaluator. See id. at 41.  Instead, "[r]atings are given by team consensus and at the Factor level only." Id.

### 1.    Technical Factor

The Technical factor is further divided into five subfactors: (1) Management Approach; (2) Personnel Qualifications; (3) Operations & Quality Assurance; (4) Contingency Plan & Security; and (5) Veterans Preference. Id. 137.  Each subfactor listed multiple elements that the proposal was to discuss, and required bidders to provide information on, among other things, its plan to ensure continuity and care; procedures regarding compliance with VA rules; and information about personnel (including respiratory therapists and management) who would implement the contract. Id. at 135-138.

Offerors were assigned a Technical Factor rating on a five-level scale.  The possible ratings were, from highest to lowest, "Blue," "Green," "Yellow," "Pink," and "Red."  Id. at 138.  The highest rating, "Blue," represents a proposal that "meets all solicitation requirements, demonstrates an excellent understanding of the requirements and offers approaches that offer significant advantage to the Government."  Id. .  The worst Technical Factor rating a proposal could receive was "Red," which represents a proposal that "demonstrates little to no understanding of the requirements; or approach fails to adequately meet acceptable performance expectations."  Id.  A "Yellow" rating was the lowest rating a proposal could receive and still be considered technically acceptable.  Id.

### 2.    Past Performance Factor

In order to determine an offeror's score on the Past Performance factor, the RFP required the government to conduct a two-part analysis of the (1) relevancy of the bidder's past experiences and (2) the quality of the bidder's past performance.  Id. at 139. Offerors were instructed to "identify three or more Federal, State, or private sector contracts of similar type, scope, size, and complexity that are ongoing, and/or have been completed within the last five years."  Id.  In order to determine relevancy, the VA instructed that all proposals were to "[p]rovide the details of those contracts to include dates of contract, dollar value, patients served and scope of services provided."  Id.  If the offeror did not have a record of relevant past performance, it would not necessarily be fatal to the offeror's proposal; however, "an offeror with no record of past performance, while rated 'neutral' in past performance, may not be the most advantageous proposal to the government all factors

being considered." Id.  The quality of an offeror's past performance would then be assessed

based on the references the offeror provided, with the government instructed to consider

"whether or not they believe (1) that the offeror was capable, efficient, and effective, (2)

that the offerors performance conformed to the terms and conditions of its contract, (3)

that the offeror was reasonable and co-operative during performance, and (4) that the

offeror was committed to customer satisfaction."  Id.  Offerors would then be assigned

an overall past performance rating ranging from "Very Low Risk" to "High Risk," with

offerors lacking relevant past experience rated as "Neutral." Id. at 140.

### 3.    Price Factor

Pursuant to the RFP, the Price Factor was weighed less than the Technical and

Past Performance factors. Id. at 140.  The solicitation instructed that the Source Selection

Authority (SSA) would evaluate the proposed price for reasonableness.  The government

provided an Independent Government Cost Estimate ("IGCE") for the procurement of

$51,950,000, which was not broken down by CLIN, in order to test the proposals for

reasonableness. Id. at 36. Id.  However, the Source Selection Evaluation Board ("SSEB") was

instructed to "evaluate pricing only as to whether it is realistic to the effort." Id.  The RFP

explained that "[u]nrealistically low proposed prices may be grounds for eliminating a

proposal from competition either on the basis that either the offeror does not understand

the requirement or the offeror has made an unrealistic offer." Id.  The solicitation asked

bidders to fill in unit prices on a Contract Line Item Number ("CLIN") table. Id.  The

solicitation did not require bidders to provide supporting data or a narrative explanation

for the bidder's price for each CLIN.

B.     **The Evaluation and Best Value Determination**

The VA received proposals from six companies: Rotech; CSS; [. . .]; [. . .]; [. . .]; and [. . .] by the solicitation's close date of February 19, 2014.  No offerors challenged the terms of the solicitation prior to submitting a proposal or before the award of the contract.  All proposals first evaluated by the individual members of the SSEB.  Id. at 4267.  The SSEB then "met after evaluation of each proposal to achieve general consensus for each offeror and then provided a recommendation to the SSA."  Id.

Rotech and CSS both received "Blue" ratings on the Technical factor.  [. . . ] and [. . .] received "Yellow" ratings, the lowest acceptable rating.  Id. at 4267.  [. . .] and [. . .] each received unacceptable "Pink" ratings on the Technical element of their proposal.  Id. The VA found that CSS and Rotech each had "very relevant" experience that, when combined with the quality assessment, resulted in a "Low Risk" proposal.  Id. at 4267; id. at 7461 (CSS relevancy assessment); id. at 6972 (Rotech relevancy assessment).  The other four offerors received either "Neutral Risk" or "Average Risk" ratings.  Id.

After initial evaluations, the VA performed a competitive range down-select.  The VA decided to eliminate all proposals rated "Yellow" or lower on the Technical factor, and all proposals with Neutral or Average Risk ratings on Past Performance.  Id. at 4267. As a result, only CSS and Rotech remained in the running.  During this round of evaluations, CSS received eight questions on Technical factor issues, including questions regarding facilities and personnel in VISN.  Id. at 4268.  In response to the VA's concern that CSS's proposal did not include enough facilities to serve patients in Maine, CSS agreed to increase the number of facilities it would open in that state.  Id.  The Agency

determined that CSS's discussions response resolved all concerns and/or ambiguities in the CSS technical proposal.  Id. at 4268.  CSS received no questions with respect to its proposed price, which remained unchanged throughout the process.

Rotech received six questions relating to its technical proposal and one relating to its pricing.  Id.  The price inquiry stated that the VA was "unable to back into your pricing proposal" and asked Rotech to "verify [its] pricing and resubmit."  Id. at 4369.  CSS's price of $46.3 million ranked third out of six offerors, while Rotech's price of $62.8 million was the highest.  Id. at 4247 (Price Negotiation Memo).  CSS's pricing was the closest to the IGCE of any of the six original offerors.  Id.  On July 29, 2014, the VA informed Rotech that "their pricing was too high" and asked both CSS and Rotech to submit their best proposal.  Id. at 4270.  Rotech subsequently reduced its price from $62.8 million to $51.9 million. Id. at 4214-4244.

In the evaluation of final proposal revisions, Rotech and CSS's Past Performance and Technical factor rankings carried forward to the final round.  The following chart, included in the Best Value Determination, summarizes the SSEB's findings:

| | [. . .] | Community Surgical Supply of Toms River, Inc | [. . .] | [. . .] | [. . .] | Rotech |
|---|---|---|---|---|---|---|
| Past Performance | | Low-Risk | | | | Low-Risk |
| Technical | [. . .] | Blue | [. . .] | [. . .] | [. . .] | Blue |
| Price Inclusive of Options | $58,439,752.80 | $46,311,870.00 | $42,225,015.00 | $42,453,360.00 | $61,645,080.00 | $51,987,189.00 |
| Base | | | | | | |
| Option Yr. 1 | | | | | | |
| Option Yr. 2 | | | [. . .] | | | |
| Option Yr. 3 | | | | | | |
| Option Yr. 4 | | | | | | |

Id. at 4267.  In the combined non-price evaluation, CSS received 34 strengths and two weaknesses.[2]  Id. at 4259-61.  Rotech received 21 strengths and no weaknesses.  Id. at 4266-67.

Both Rotech and CSS received ratings of "Blue," on the Technical factor, which was the best technical rating available, and a "Low-Risk" rating on the Past Performance factor.  Id. at 4267.  In addition, CSS's proposed price of 10.8% lower than Rotech's reduced final price proposal.  Id.  As a result, the Agency determined that CSS's proposal presented the "best value" to the Government:

> This offer [CSS] represented the best value to the government based on Best Value to the government by offering the Highest combined Technical and Past Performance Rating along with the lowest price determined to be fair and reasonable by the contracting officer.

Id. at 4270.  On August 1, 2014, the VA notified the offerors that the contract was awarded to CSS.  Id. at 4306.

### C.   Post-Award Activities and Rotech's Protest in the Government Accountability Office

On August 7, 2014, the VA conducted Rotech's debriefing.  According to Rotech, during that meeting, the SSA on the contract, Lorrie Baines, stated that the VA believed that CSS would not be able to complete the transition process within ninety days.  See Pl.'s Mot to Supplement the AR, ECF No. 34 ("Mot. to Supp. AR").  Rotech has submitted declarations stating that Ms. Baines told Rotech that the transition would take

---

[2] CSS's weaknesses were that it did not have a respiratory technician in Vermont and that CSS's bid had not proposed enough drivers or customer service personnel.  AR 4261.  The solicitation categorized negative aspects of proposals as either "Weaknesses" or "Significant Weaknesses," with CSS's weaknesses being the former.  Id.

that amount of time because CSS needed to open facilities and purchase equipment to service the VISN 1 service area.  Id. at 2.  According to Rotech, Ms. Baines stated that the VA would extend Rotech's existing contract until CSS was able to complete the transition.  Id.

Rotech filed a protest with the Government Accountability Office ("GAO") on August 11, 2014.  AR 4309-4462.  As in this protest, Rotech claimed that (1) VA's evaluation of the Technical Factor was flawed; (2) VA failed to follow the Solicitation's evaluation criteria for Past Performance; (3) the VA's price evaluation did not comply with the Solicitation because the VA did not conduct a price realism analysis; and (4) the VA failed to conduct a proper best value determination.  Id.  In a supplemental protest filed on August 18, 2014, Rotech expanded the basis of its protest, claiming that CSS's proposal should have been disqualified or substantially downgraded because it lacked a viable transition plan.  Id. at 7168-7176.  The VA subsequently submitted an agency report addressing Rotech's allegations on September 10, 2014.  Id. at 4463-7167.  The agency also submitted a brief supplemental contracting officer narrative addressing Rotech's supplemental allegations on September 29, 2014.  Id. at 7177-7185.  CSS participated in the protest as an intervenor for the defendant.

The GAO denied Rotech's protest on November 5, 2014.  Id. at 7186-7195.  The GAO found that Rotech's claim that CSS's transition plan was unrealistic lacked merit because the question of whether CSS could complete the transition in the time specified by the contract is a matter of contract administration.  Id. at 7189.  Regarding Rotech's claims that the VA's evaluation of the Technical Factor was flawed because CSS did not

operate facilities or employ qualified personnel within VISN 1, GAO held that the

argument was without merit because the solicitation did not require the offeror to already

have established operations within VISN 1.  Id. at 7188.  Nor did the solicitation require

an offeror to "identify their proposed facilities or identify all the personnel that would

perform the requirements."  Id.  The GAO noted that in accordance with the solicitation's

requirements, CSS's proposal:

> . . . identified various facilities that it was considering throughout the New
> England area, that it planned to identify and secure 10 locations as part of
> its transition process, it identified specific individuals who would be
> involved with transition, and indicated that [CSS] had initiated the process
> of obtaining licensure and insurance certification necessary to provide
> services in VISN 1.

Id. at 7188.

The GAO also held that "the record fails to support the protester's argument that

[CSS] failed to identify a local management team and the respiratory therapists," noting

that CSS's technical proposal identified "its president, vice president, general manager,

operations manager/regional project manager, director of business development/primary

point of contact, director of customer service, director of billing, director of quality

control, human resources manager, and alternate project manager."  Id. at 7189.

Similarly, with respect to respiratory therapists, the GAO held "the mere fact that the

individuals identified are prospective hires does not demonstrate that the evaluators could

not reasonably have viewed [CSS's] plan for providing qualified therapists as low risk."

Id. at 7190.   The agency found that "the level of risk associated with the awardee's plan

to hire qualified personnel is a matter of agency judgment, and the mere fact that the

protester disagrees with the agency's assessment does not demonstrate that the agency's judgment was unreasonable." Id.

The GAO likewise held that Rotech's past performance claims lacked merit, finding that VA did not act unreasonably when it determined that CSS's performance within VISN 10 was very relevant for evaluative purposes given that the VISN 10 contract required CSS to provide services to more patients than the estimated number that would be served under the VISN 1 contract and more complex services than were to be provided under the VISN 1 contract. Id. at 7193. The GAO also noted that CSS received more favorable quality evaluations for its performance of the VISN 10 contract than Rotech received for its comparably relevant past performance. Id. at 7193.

Finally, with respect to Rotech's claim that the VA had failed to perform a price realism analysis, the GAO concluded that "the analysis performed by the contracting officer was adequate to establish the realism of [CSS's] price." Id. at 7194. Therefore, the GAO rejected Rotech's assertion that the VA failed to document its rationale for awarding the contract to CSS, concluding "a documented tradeoff analysis is not required where, as here, the lower-priced proposal is not lower rated technically." Id. at 7195.

The GAO issued its decision denying Rotech's protest on November 5, 2014. Id. at 7186. On November 19, 2014, Rotech filed its bid protest complaint in this court. The parties subsequently filed cross-motions on the administrative record. In addition, Rotech moved to supplement the administrative record to include statements that the VA allegedly made during Rotech's debriefing. The court held an oral argument on the parties' motions on March 11, 2014.

## II.    STANDARD OF REVIEW

### A.    Standard for Judgment on the Administrative Record

RCFC 52.1 provides for review of agency action based upon the administrative record.  "Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record." Young v. United States, 497 F. App'x 59, 61 n.8 (Fed. Cir. 2012) (citing Bannum Inc. v. United States, 404 F.3d 1346, 1355-56 (Fed. Cir. 2005)).  Instead, this court is to "resolve[] questions of fact with references to the administrative record. . . .  In such instances, the Claims Court may make factual determinations and legal conclusions based on the administrative record in the first instance." Id. at 59 n.8 (citing Bannum, 404 F.3d at 1356, 1354).   Under this standard, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).

### B.    Standard for Procurement Challenges

The standard of review of an agency's action is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  28 U.S.C. § 1491(b)(4).  The Court's standard of review in bid protests is "highly deferential." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000).   The court may not set aside an agency's action unless the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Palladian Partners, Inc. v. United States, --F.3d---, No. 2014-5125, 2015 WL 1810863, at *6 (Fed. Cir. Apr. 22, 2015) (quoting Savantage Fin.

Servs. v. United States, 595 F.3d 1282, 1285 (Fed. Cir. 2010)).  In that connection, "[t]he court's task is to determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  Id. (quoting Savantage, 595 F.3d at 1285).

When challenging a procurement on the ground of a regulatory violation, the protester "must show a clear and prejudicial violation of applicable statutes or regulations."  Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citation omitted).  The Competition in Contracting Act of 1984, Pub. L. No. 98-369, 98 Stat. 1175, mandates that agencies evaluate sealed bids and competitive proposals, and award a contract, "based solely on the factors specified in the solicitation." 41 U.S.C. § 3701(a); see also 48 C.F.R. § 15.608(a).  Therefore, if an agency fails to comply with the terms of the solicitation, such failure may "constitute grounds for overturning the bid award."  Advanced Data Concepts, Inc. v. United States, 43 Fed. Cl. 410, 417 (1999).  However, when the Court finds a "reasonable basis" for an agency's action, the Court should "stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1371 (Fed. Cir. 2009) (quoting Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989)).  "This standard recognizes a zone of acceptable results in each particular case and requires that the final decision reached by an agency is the result of a process that 'consider[s] the relevant factors' and is 'within the bounds of reasoned decision making.'"  Mgmt. Solutions & Sys., Inc. v. United States, 75 Fed. Cl. 820, 827 (2007)

(quoting Balt. Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 105 (1983)).

When a protester alleges a lack of a rational basis for the agency action, the test is "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a 'heavy burden' of showing that the award decision had no rational basis." Banknote, 365 F.3d at 1351 (Fed. Cir. 2004) (citation omitted). The agency has a "particularly" high degree of discretion when, as in this case, "the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." Croman Corp. v. United States, 724 F.3d 1357, 1363 (Fed. Cir. 2013) (citing Banknote Corp., 365 F.3d at 1355.This is because a best value determination is "necessarily a subjective process." One Largo Metro, LLC v. United States, 109 Fed. Cl. 39, 97 (2013)

Even if the Court were to determine that an agency's decision-making "fails the APA review under 5 U.S.C. § 706(2)(A)," the court must still decide whether the government's conduct prejudiced the protester. See Bannum, 404 F.3d at 1351. "'[T]o prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it.'" Galen Med. Assocs. v. United States, 369 369 F.3d 1324, 1330 (Fed. Cir. 2004) (quoting Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996)). Prejudice requires the protester to show a "substantial chance" that it would have received the contract award absent the agency's error. See Bannum, 404 F.3d at 1358. Therefore, even if the plaintiff is able to show agency error, the court must uphold the agency's decision if the error did not alter the results of the

procurement.  See, e.g., Statistica, Inc. v. Christopher, 102 F.3d 1577, 1583 (Fed. Cir. 1996).

Finally, a challenger may not use a bid protest as an opportunity to challenge the terms or requirements of the solicitation itself.  In Blue & Gold Fleet, L.P. v. United States, the Federal Circuit held that "a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action . . . ."  492 F.3d 1308, 1313 (Fed. Cir. 2007).  This rule prevents the "inefficient and costly" process of conducting a second round of bidding "after offerors and the agency ha[ve] expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation."  Bannum, Inc. v. United States, 779 F.3d 1376, 1380 (Fed. Cir. 2015) (quoting Blue & Gold, 492 F.3d at 1314) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   The VA Conducted a Reasonable Technical Evaluation that Complied with the Terms of the RFP

Rotech argues that the VA's evaluation of CSS's technical proposal was arbitrary and capricious.  Specifically, Rotech argues that because CSS did not have employees or facilities already positioned in VISN 1, CSS would not be able to complete the transition in forty-five days.  Rotech also argues that CSS's bid was deficient with respect to describing the personnel and facilities CSS would use to implement the contract.  Finally, Rotech argues that CSS's proposal should have been rejected because CSS materially

misrepresented its intentions with respect to the respiratory therapists it intended to argue if awarded the contract.

However, as CSS and the government point out, the record demonstrates Rotech's arguments with respect to the Technical factor are insufficient to overcome the degree of deference this court is required to give to agency decision making. The record shows that the VA did conduct a reasonable evaluation of CSS's technical proposal in conformity with the RFP's requirements. Further, contrary to Rotech's claims, the forty-five day transition deadline is a matter of contract administration rather than a requirement for the procurement.

**1.    The VA's review of CSS's proposed transition was reasonable and conformed with the RFP**

Rotech's primary argument is that the VA failed to evaluate CSS's ability to comply with the solicitation's requirement that the transition be completed within forty-five days. Rotech argues that based on CSS's proposal, CSS would not have been able to complete the transition within the time period, and therefore the VA did not properly evaluate CSS's proposal under the Technical factor. As evidence of the VA's failure to evaluate CSS's proposal, Rotech notes that "no documents in the AR discuss CSS's ability to comply with the 45-day transition requirement," and therefore, "the VA never evaluated CSS's proposal for this requirement." Pl.'s MJAR 4. According to Rotech, "[i]f the VA had actually considered the 45-day transition requirement—which it did not—the VA would have disqualified CSS's proposal for an inadequate transition plan that failed to propose a transition within 45 days of the contract award." Id. 5-6. The

VA's action, according to Rotech, "is a violation of procurement law and regulation, and is also arbitrary and capricious." Id. at 17.

The defendants counter that CSS never stated that it could not complete the transition within forty-five days and that the agency's review of CSS's transition plan complied with the regulations.   According to the defendants, Rotech's arguments represent an improper attempt to add requirements to the RFP post award.

At the outset, it is important to note the relative importance of the transition plan in the context of the RFP as a whole.  The contract contemplated a contractual arrangement to provide a wide variety of services over a five year period, and the structure of the RFP demonstrates that a bidder's transition plan was less important than the many substantive aspects of a bidder's proposal.  Though the agency was required to evaluate the transition, a bidder's transition plan represented only one out of six areas of discussion in the Management Approach subfactor, which in turn is only one of five subfactors in the Technical factor, which in turn is only one of the three factors that the RFP required the agency to consider and evaluate.  Further, a bidder's description of its transition plan was limited to ten pages.  This limitation indicates that the RFP did not contemplate a bidder submitting a transition plan containing every detail.

Turning to the forty-five day time limit for the transition, the court finds that he language and structure of the solicitation demonstrate that the agency was not required to specifically find that a bidder must be able to complete the transition within forty-five days, and that an inability to do so would not automatically disqualify a bidder from consideration.  The statement of work explains that during the forty-five day period

following the award of the contract to a new offeror, the outgoing and new contractors

shall coordinate the transfer of care, and contains the obligations of the outgoing

contractor, the incoming contractor, and the government during that time period.  AR 60.

The solicitation explains that, during this transition period, the VA will continue to pay

the outgoing contractor for services provided to patients while the incoming contractor is

setting up its equipment.  Id.  The solicitation states that this equipment transfer "will be

accomplished within the time frame established 'as soon as possible after award, but not

to exceed 45 days.'"  Id. at 53.

However, the same provision specifically contemplates the possibility that an

awardee may not complete the transition within that time, and provides an alternative

plan for that scenario: "Failure to perform the switch-outs as specified will result in a

forfeit of payment to the provider currently used for every day thereafter until switch-out

is complete.  Payments will be assessed based on that providers established rate and

prorated from setup date."  Id. at 53 (emphasis added).  Therefore, the forty-five day

transition period is not a determinative solicitation requirement, but merely sets a limit on

the government's obligation to the outgoing contractor.  The contract provides an

incentive for the incoming contractor to complete the transition within forty-five days,

and requires the incoming contractor to pay the outgoing contractor's rate after that time

period.  Consequently, the length of the transition is a matter of contract administration,

and not a requirement for a successful bid, because penalties for untimely performance

could only be assessed after a contract was awarded.  See Allied Tech. Grp., Inc. v.

United States, 649 F.3d 1320, 1330 (Fed. Cir. 2011) (finding that an "offeror's potential

failure to comply with the proposal requirements is ordinarily "a matter of contract administration,' which does not go to the propriety of accepting the bid." (quoting Centech Grp., Inc. v. United States, 554 F.3d 1029, 1039 (Fed. Cir. 2009))).

According to Rotech's argument, the agency was required to specifically find that CSS could the complete the transition within forty-five days and eliminate all bidders who the VA found could not do so. But Rotech's reading of the solicitation conflicts with the RFP's provisions describing the transition process. Rotech is asking this court to add a determinative condition to the solicitation, which this court cannot do. The Federal Circuit recognized the Court of Federal Claim's duty "to determine whether the agency's [evaluation] was consistent with the evaluation criteria set forth in the RFP, . . . [and] not to introduce new requirements outside the scope of the RFP." Alabama Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375-76 (Fed. Cir. 2009) (holding that the Court of Federal Claims's "attempt to rewrite the RFP" went beyond the scope of the court's review) (citation omitted). Because the agency's decision was rational, the court must defer to its judgment.

In addition, CSS never stated—and the agency did not find—that CSS could not complete the transition within forty-five days, a position CSS reiterated at oral argument.[3]

---

[3] Rotech asserts that the VA's "evaluation CSS's transition plan also conflicts with its evaluation of other offerors' transition plans." Pl.'s MJAR 5. Specifically, Rotech argues that [. . .] was disqualified "in large part because" [. . .]'s transition plan "conflicted with the Solicitation's 45-day transition requirement . . . ." Id. Therefore, according to Rotech, "the VA should have come to the same conclusion with CSS—and also disqualified CSS based on its inability to meet the transition requirement." Id. However, unlike [. . .], CSS never stated that it could not complete the transition within forty-five days.

At oral argument, CSS again asserted its position that the transition could be completed within that time period.  Rotech's arguments are based on its assumptions that a non-incumbent could not find adequate facilities and staff within that time period.  However, as discussed above, the agency's review of the transition plan with respect to these issues was adequate and conformed with the RFP.  Nothing in Rotech's briefs shows that review to be irrational

### 2. The agency reasonably evaluated CSS's transition plan with respect to personnel and facilities

Rotech argues that the VA failed to evaluate the fact that at the time CSS submitted its proposal, CSS did not have personnel or facilities in VISN 1.  Therefore, according to plaintiff,

> [i]n order to become fully operational in New England, CSS would have to, among other things, (1) find, lease and prepare at least 10 facilities, (2) hire new or transfer current employees to New England, and (3) secure insurance and accreditation for each facility.

Pl.'s MJAR at 7.  Rotech argues that the VA's failure to downgrade CSS due to its lack of local personnel or facilities was in violation of the solicitation.  Had VA done an adequate evaluation of the risks posed by CSS's proposal, Rotech argues, Rotech would have had a substantially higher chance of being awarded the contract.  In response, the government argues that each of these arguments are an attempt by Rotech "to inject new requirements into the solicitation in areas where it perceives CSS's Technical Factor proposal to be lacking." Gov't MJAR 18.

The agency's review of CSS's transition plan is documented in the record.  After the agency received a summary of its transition plan as part of its proposal, the VA

reviewed the proposal and responded asking for additional information.  AR 4268.

Specifically, the VA asked CSS to list the names of personnel, by name and credential,

who would be responsible for the transition, and asked CSS to provide information about

any experience those individuals had in contract transition.  Id.  CSS responded to the

agency and provided the list of responsible employees, some of which had previous

experience in transitioning VA contracts in other VISNs.  Id. at 4135.  The agency found

that CSS's response to its question addressed all of the concerns raised in the discussions,

noting that CSS's response "named specific and adequate personnel to meet the needs of

the transition."  Id. at 4268.

    The agency also raised concerns about CSS's proposal's inclusion of only one

facility in the state of Maine.  Id. at 4268.  The agency estimated that at least three

locations would be needed to meet the demand in that area.  Id.  In response, CSS

committed to opening three facilities in Maine, "and any additional locations, as needed."

Id. at 4134.  CSS's response to the agency's questions also included a commitment to

identify and secure ten locations in the VISN.  Id. at 4135.

    With respect to personnel, the solicitation required offerors to submit the

following information about proposed respiratory therapists:

> Summary sheet listing the number of Respiratory Therapists to be assigned
> to this requirement.  Also include type of credentials (resumes) and years of
> experience performing home oxygen services and production of Consult
> Reports.  Information should describe the qualifications of the personnel,
> i.e., types of experience years of experience, education, requisite trainings
> (and frequency of trainings) and certifications of therapist personnel to be
> assigned in the performance of this contract.  Please include copies of
> certifications of the therapist staff intended for the effort

Id. at 137.  The RFP also required summary sheets listing key management staff "who will work with the VA on day-to-day operational issues."  Id.

As required, CSS provided the resumes and licensing information of respiratory therapists within the VISN 1 region to be assigned to the contract together with a sheet summarizing the number of therapist it intended to hire and their respective credentials.. Id. at 537-616.  CSS stated that "[t]he process for licensure and insurance certification has already been initiated and we are well on our way to meeting the regulations and guidelines for providing respiratory services to the patients in VISN 1."  Id. at 534, 553-619.  CSS's proposal also included a summary sheet and additional information regarding the members of its senior management team, including the company's president, vice president, and general manager.  Id. at 551.  CSS also listed the personnel that would be responsible for managing CSS's relationship with VA in VISN 1, including its operations manager/regional project manager, director of business development/primary point of contact, director of customer service, director of billing, director of quality control, human resources manager, and alternate project manager.  Id. at 553.

The agency found that CSS's discussion of the transition process in its proposal and responses to the agency's question was acceptable, and merited a "Blue" rating on the Technical factor.  The court finds that the procedures the agency used complied with the solicitation and that its conclusions were rational.  In light of this evidence in the record, Rotech's arguments that the agency failed to adequately assess CSS's transition plan as it applied to personnel and facilities are unavailing.  To the extent that Rotech is arguing that the VA failed to adequately weigh CSS's lack of personnel and facilities

when evaluating CSS's proposal, the court finds that the solicitation left the question to the agency's discretion.[4]

To the extent that Rotech is arguing that the solicitation required bidders to have personnel and facilities already in place, Rotech is simply incorrect.  As the GAO rightly found, the RFP did not require an offeror to have employees and facilities at the time the offer was made:

> The solicitation did not require a previously established presence in the coverage area, as Rotech's arguments would suggest. In fact, <u>the solicitation did not expressly require offerors to identify their proposed facilities or identify all the personnel that would perform the requirements.</u> Nor did it indicate that such facilities or personnel would be considered in the evaluation.

Id. at 7188-89 (emphasis added).  Rotech argues that providing a list of respiratory therapists was insufficient because these therapists were not currently employed by CSS at the time it submitted its proposal, and CSS found many of the resumes on employment websites.  However, the RFP required only that offerors identify the respiratory therapists "<u>to be assigned</u> in the performance of this contract."  Id. at 137 (emphasis added).  There was no requirement that those therapists already be employed by the offeror, and

---

[4] Rotech's claim that the VA did not assess Rotech's past experience as part of the Technical factor lacks merit.   Rotech's only evidence of this claim is that the words "past experience" do not appear in the Best Value Determination.  However, the record contains numerous instances of CSS's past experience being evaluated as part of the Technical factor.   The evaluation worksheets for the technical evaluation demonstrate that the evaluators had a specific worksheet set aside for this aspect of the Subfactor 1 evaluation.  The individual evaluators completed this worksheet during the CSS evaluation.  See, e.g., AR 3589, 3611, 3622.  In these worksheets, the evaluators recommended assigning specific subfactor color ratings, and provided suggested strengths and weaknesses.  The fact that the Best Value Determination does not specifically state which of Rotech's strengths come from this particular element does not mean that no evaluation was performed.

therefore, the court may not add such a requirement to the solicitation.  See Blue & Gold, 492 F.3d at 1313.

### 3.    There was no material misrepresentation in CSS's proposal with respect personnel

Finally, Rotech argues that though CSS listed the resumes of respiratory therapists found on an employment website as prospective employees in its proposal, CSS actually intended to hire Rotech's employees if it were awarded the contract.  Rotech characterizes CSS's alleged plan as a "bait and switch" and a material misrepresentation that disqualifies it from being awarded the contract.  Rotech relies on Planning Research Corp. v. United States, a case that upheld an agency's finding that an offeror's bid included a material misrepresentation when the offeror proposed using one set of employees knowing that it fully intended to hire the incumbent's employees when the offeror had been informed that hiring the incumbent's employees would be a weakness in its proposal and the offeror assured the agency that it did not plan to hire them.  971 F.2d 736 (Fed. Cir. 1992).

However, there is no evidence in the administrative record to support Rotech's assertion that CSS was untruthful in its proposal.  Even if CSS ultimately did hire individuals other than those listed in its proposal, including some of Rotech's current employees, that would not be evidence that CSS misrepresented itself given the fact that so much time has passed since it submitted its proposal.  In addition, Rotech has shown no reason why, even if CSS did intend to hire Rotech's personnel to perform certain work, this information would have been material to the VA's decision making process.

Further, CSS identified all of its own key management personnel and there is no evidence to suggest that these individuals will not be available, as CSS has promised.

B.    **The VA Conducted a Reasonable Past Performance Evaluation that Complied with the Terms of the RFP**

Rotech argues that the VA failed to apply the RFP's selection criteria with respect to Past Performance factor when evaluating CSS's proposal.  Pl.'s MJAR 27.  Rotech makes two arguments with respect to the Past Performance factor.  First, Rotech argues that it and CSS were not evaluated using the same forms, and therefore the agency's decision was arbitrary and capricious.   Second, Rotech argues that the VA wrongly evaluated CSS to have "very relevant" experience, which in turn led to an incorrect "Low Risk" rating.  With respect to Rotech's first argument, the government and CSS counter that Rotech was not prejudiced by the use of different forms because the two forms collected essentially the same information.  Defendants also argue that, under the deferential standard of review granted to an agency's past performance reviews, the administrative record demonstrates that the VA's decision to rate CSS's proposal as "low risk" was reasonable.  For the reasons discussed below, the court agrees with the defendants.

1.    **The VA's assessment of CSS's prior contracts was reasonable**

As discussed above, the Past Performance factor consists of two subfactors: relevancy and quality.   Rotech argues that the VA acted arbitrarily and capriciously with respect to its evaluation of the relevancy of CSS's past experiences and wrongly classified CSS's former contracts as "Very Relevant."  As a result, Rotech argues, CSS's

"Low Risk" rating on the Past Performance factor is incorrect for two reasons: first; that

the VA did not evaluate the relevancy of CSS's past and current contracts; and second,

that as a factual matter, CSS's other contracts are not comparable to the procurement at

issue in this case.  Rotech asserts that the record in this case "contains no documents that

indicate that the VA performed the required interim assessment of the relevance of any of

CSS's past or present contracts."  Pl.'s MJAR 20.[5]  But the record simply does not

support this position.  The record contains evidence which show that the VA did in fact

evaluate Rotech's past contracts for relevancy.  In addition, the fact that CSS had such

positive reviews with respect to the quality subfactor supports the defendant's assertion

that the overall "low risk" rating is a reasonable assessment.

    The solicitation thus explained that the VA would evaluate offerors' ability to

perform successfully "based on the offerors' demonstrated past and present

performance," and that both the relevancy and quality of performance in past contracts

was to be taken into account.  AR 140.  The solicitation defined recent and relevant

contracts as ones performed at either the Federal or state level, or within the private

sector "of similar type, scope, size, and complexity that are ongoing, and/or have been

completed within the last five years."  Id. at 139.  Contracts were considered "very

---

[5] Rotech also takes the position that the VA was required to assign ratings between "Very
Relevant" and "Not Relevant" to each offerors proposals, and states that "the VA and CSS do
not dispute that the VA failed to assign the required ratings."  Pl.'s Reply 20-21.  But the RFP
contradicts Rotech's assumption.  While the RFP called for evaluators to designate a level of
relevancy to an offeror's specific past projects, an overall "rating will not be given at the
subfactor level or by an individual rater. Ratings are given by team consensus at the Factor level
only."  AR 41.

relevant" if they involved the same effort and complexities as the one being awarded, "relevant" if they involved much of the same effort and complexities, and "somewhat relevant" if they involved some of the effort and complexities. Id. at 139.

The solicitation made clear that VA would consider information obtained from references, as well as information provided by offerors and other sources. Id. at 139. The solicitation went on to explain that the past performance evaluations would yield performance assessments rating reflecting "the Government evaluation team's judgment of the probability of an offeror successfully accomplishing the proposed effort[.]" Id. at 140. Both Rotech and CSS ultimately received ratings of "low risk," which the solicitation defined as a "good probability of success with overall low degree of risk in meeting the government's requirements." Id. at 4108, 140.

A summary of the agency's review of the relevancy of CSS's past contracts can be found in CSS's evaluation summary, and demonstrates that the agency did consider relevancy as required by the solicitation. See AR 4278. The record supports the agency's finding that CSS's performance of a similar contract in VISN 10 is "very relevant" to the work to be performed under this contract. Though the VISN 10 contract was initially much smaller than the VISN 1 contract in terms of dollar amount, the contract has grown significantly over the years and covers a large number of patients. The VISN 10 also involved similar levels of complexity, including treating patients in their homes across multiple states. The Federal Circuit has recognized that procuring agencies are afforded "broad discretion" to make judgments regarding past performance relevancy. Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 910 (Fed. Cir. 2013); PlanetSpace,

Inc. v. United States, 92 Fed. Cl. 520, 539 (2010) ("[I]t is important to note that what does or does not constitute 'relevant' past performance falls within the [Source Selection Authority's] considered discretion."). In this case, the plaintiff has not given the court any reason to believe that agency's evaluation of the relevancy and quality of CSS's past experience was not rational.

In addition, with respect to the quality subfactor, CSS's positive references on past contracts adequately support the fact that the "low risk" rating it received from the evaluators was rational, and thus entitled to deference. In CSS's past performance questionnaire for the VISN 10 contract, [. . .], the VISN Prosthetic Representative, stated that CSS provided "oxygen very timely and systematically in accordance to our contract and has never deviated from the prescription. Id. at 7379.[6] CSS received an overall rating of "exceptional," meaning "the contractor's performance record within the area of evaluation exceeded that required by the contract[,]" and a report that "Community Surgical Supply has been excellent and have satisfied all aspects of our veterans oxygen needs" for its VISN 10 contract, under which it successfully served a population of over 4,500 patients, including ventilator patients, for five years across all of Ohio, and parts of Kentucky, Indiana and Pennsylvania. Id. at 7381, 4482.

---

[6] The SSEB also received a past performance questionnaire related to CSS's performance of a smaller contract (approximately 630 patients) for respiratory services for the Erie, Pennsylvania VA Medical Center. AR 7371-7375. That questionnaire rated CSS's performance as satisfactory but also noted that "[t]he service level has greatly improved in the past two years[.]" Id. at 7375.

Further, Mr. [. . .] noted that "VISN 10 has a stringent contract oversight process that reports to VISN and medical center leadership, Community Surgical has provided oxygen to veterans under any weather related conditions and exceeds the Joint Commission standards related to homecare." Id.  Answering whether CSS was able to handle the volume of patients within the deadlines required under the contract, Mr. Floyd answered "Yes, and very well." Id.  Mr. [. . .] also noted that "Community Surgical staff are very courteous and professional, [and] the VA have received reports of veterans insisting that we keep this company forever." Id. at 7379-7380.  When asked whether he would award another contract to CSS, Mr. [. . .] stated simply "YES." Id. at 7380.

The SSA also followed up with Mr. [. . .] by telephone in July 2014 to review his past performance questionnaire responses. Id. at 7184.  During that call, Mr. [. . .] affirmed his satisfaction with CSS's performance of the VISN 10 contract, noting that "[t]he feedback from the Home Oxygen Coordinators has always been positive, CSS is responsive" and that the company "display[ed] a high level of effective management of respiratory services." Id.  Citing CSS's purchase of all new equipment to support the VISN 10 contract (a fact the SSEB cited as a strength of CSS's VISN 1 proposal), "high levels of contractor performance and satisfaction" and effective management a major weather emergency, Mr. [. . .] concluded that the company was an "excellent vendor and supplier of home oxygen products and services." Id. at 7185.  In the agency's review of CSS's strengths, the VA specifically identified CSS's "proven track record" and "[e]xceptional rating" in the VISN 10 contract, and "[l]engthy [h]istory describing patients

served, id. at 4260, demonstrating that the quality of CSS's past performance was in fact taken into consideration.

Therefore, the court finds that the VA adequately reviewed the relevancy of CSS's past contracts and finds that its overall "low risk" rating on past performance was reasonable.

## 2.      Rotech has not shown prejudice from the use of different forms.

Rotech argues that the VA "arbitrarily and capriciously [used] different worksheets to evaluate CSS and Rotech."  Pl.'s MJAR 36.  Specifically, Rotech argues that the VA used both the Subfactor 1 and Subfactor 2 worksheets to assess Rotech's Past Performance, the VA used only the Subfactor 2 worksheets to evaluate CSS's Past Performance.  Id. at 36 (citing AR 7382-413; 7351-70).[7]  Rotech argues that

> [H]ad the VA properly reviewed the relevance of CSS's Past Performance—and the Subfactor 1 worksheet would have assisted in this effort—the VA would have found that CSS's Past Performance was no more than 'SOMEWHAT RELEVANT' and CSS would have received a lower overall Past Performance score.  Even if CSS had received a "RELEVANT" Past Performance rating, that change may have resulted in a lower adjectival rating for CSS, which would have provided Rotech with a substantial chance of winning the competition.

Pl.'s Rep. 24-25.

The government and CSS argue that Rotech is overstating the importance of the worksheets, and that Rotech suffered no prejudice as a result of the agency using the

---

[7] "Subfactor 1" refers to the relevancy of past contracts, the first factor to be considered in the past performance ratings, while "Subfactor 2" refers to the quality assessment of past performances.  On the Subfactor 1 worksheet, evaluators could note whether an offeror had identified three or more contracts of similar type, scope, size, and complexity, and whether the firm had provided the dates, dollar value, number of patients served, and the scope of the services provided.  AR 7388.

extra worksheet to evaluate it and not CSS.  According to the defendants, the extra

worksheets were used primarily as "scrap paper" and did not meaningfully contribute to

the agency's decision.  In addition, CSS stated that the missing worksheets "seem[] more

like an issue of VA record retention than an allegation of procedural misconduct in the

procurement."  CSS MJAR 30.

The court agrees with the defendants.  The Subfactor 1 worksheets provided the

evaluators with a tool to summarize some information about the bidders' previous

contracts, but were not the source of that information.  All of the data that would have

been reflected in the Subfactor 1 worksheets would have also been found in the

questionnaires the agency sent to the bidders' references.  Further, the record shows that

the Subfactor 1 worksheets were not used to evaluate Rotech in any meaningful way.

Though the worksheets may have reflected the impressions of individual evaluators, they

do not appear to have been an evaluative mechanism for the relevancy factor.  The

worksheets contained checkboxes for scoring various elements, but the checkboxes do

not appear to have been used.  Therefore, the agency's failure to use the Subfactor 1

worksheets to evaluate CSS is also not meaningful.

Most importantly, Rotech fails to establish prejudice.  Rotech's argument—that

the use of these forms would have assisted the VA in giving CSS a lower adjectival

description on the relevancy subfactor, which in turn could have led to CSS receiving a

worse rating on overall past performance, which in turn could have provided Rotech with

a substantial chance of winning the competition—is too speculative.  The record shows

that the VA did a reasonable review of both the relevancy and quality of CSS's past

work, leading to a "Low Risk" final assessment.  The absence of the Subfactor 1 worksheets is not sufficient to call the rationality of the VA's decision into question.

### C.    The VA Conducted a Rational Price Determination that Complied with the Terms of the RFP

Finally, Rotech challenges the VA's evaluation under the Price factor.  Rotech alleges that the RFP required the VA to conduct a price realism analysis on CSS's bid.  A "price realism" analysis may be called for if a bidder's price appears to be "so low that performance of the contract will be threatened."  DMS All-Star Joint Venture v. United States, 90 Fed. Cl. 653, 657 n.5 (2010). [8]  Rotech claims that, contrary to the RFP's instructions, the VA never "made any determination or conducted any review as to price realism for CSS or any other offeror."  Pl.'s MJAR 15.  According to Rotech, the language of the solicitation, specifically, the statement that "Unrealistically low proposed prices may be grounds for eliminating a proposal" required the agency to conduct a price realism review.  Pl.'s Rep. 31.  Rotech asserts that had the VA undertaken such an analysis, it would have found that CSS's prices were unrealistic.  Rotech suggests that the VA could have used additional methods of evaluation, such as historic prices, comparisons to rates paid in other VISNs, and comparisons to Medicare reimbursement rates to determine realism.   Rotech points out that CSS's price were 10% lower than the IGCE, and even lower still than Rotech's final bid.  Rotech also notes that for certain line items, CSS's prices were more than 33% lower than Rotech's.  Rotech argues that the

---

[8] Price realism analysis is not to be confused with price reasonableness analysis, which an agency may employ if a bidder's offer appears to be too high.  DMS, 90 Fed. Cl. at 657 n.5.

fact that CSS's prices were higher than two of the original bids is not relevant because those offerors were eliminated on the bases of their past performance and technical proposals before the VA had conducted any evaluation of their prices.

The government and CSS both argue that the price comparisons the VA conducted satisfied the requirements of the RFP.  The government claims that Rotech's reading of the RFP is an attempt to "introduce new requirements outside the scope of the RFP."  Gov't MJAR 44 (citing Alabama Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375-76 (Fed. Cir. 2009)).  The government argues that had the RFP contemplated a detailed price realism analysis, it would have requested additional information and instructed the agency to conduct a specific method of analysis.  The government also challenges the logic of Rotech's argument that CSS's offer was unreasonable because it was 10% lower than Rotech's final offer.

The court agrees with the defendants.  Absent instruction from the RFP, the agency would not be required to consider realism in a fixed-price contract because "the fixed price task order puts the risk of underpriced offers on the contractor."  Afghan Am. Army Servs. Corp. v. United States, 90 Fed. Cl. 341, 356 (2009) (citing Femme Comp Inc. v. United States, 83 Fed. Cl. 704, 755 (2008)).  Therefore, the only reason any consideration of realism is necessary is the language in the RFP stating that unrealistically low offers may be eliminated.  The Federal Circuit has instructed that a "trial court's duty was to determine whether the agency's price-realism analysis was consistent with the evaluation criteria set forth in the RFP."  Alabama Aircraft, 586 F.3d at 1375-76 (citing Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed.

Cir. 2004)).  The RFP states that an "unrealistically low price may be grounds for eliminating a proposal."  AR 140.  Other courts have found that similar language in an RFP necessitated some type of price realism analysis, see Afghan Am. Army Servs. Corp. v. United States, 90 Fed. Cl. 341, 357 (2009) (finding that a price realism analysis was required when the solicitation stated that the agency would "evaluate price proposals to determine whether the offered price reflects a sufficient understanding of the contract requirements and the risk inherent in the offeror's approach" and that proposals with "an unreasonable (high or low) price may be deemed to be unacceptable and may not receive further consideration.").

However, the RFP did not make any commitments to perform a price realism analysis in any particular manner.  Therefore, the methodology is left to the agency's discretion.  Ne. Military Sales, Inc. v. United States, 100 Fed. Cl. 103, 118 (2011) (finding that because the "Solicitation does not describe the methodology required to conduct the price realism analysis[,]" the agency "enjoy[s] broad discretion in conducting its price realism analysis."); see also FCN, Inc. v. United States, 115 Fed. Cl. 335, 375 (2014) ("The extent of a price realism analysis for each procurement can vary, and generally is within the discretion of the agency." (citing Mil-Mar Century Corp. v. United States, 111 Fed. Cl. 508, 541 (2013))).

In her Supplemental Agency Report before the GAO, Lorrie Baines, the SSA on this contract, explained the process of price analysis:

> As SSA, I reviewed the pricing for realism and reasonableness and found CSS's pricing to be realistic.  They were the fourth highest quote of six offers.  They were comparable to the IGCE and a thorough review of the

> line-by-line cost elements revealed no unbalanced pricing and no
> mathematical error.  This was the basis of my conclusion that the CSS offer
> is realistic and reasonable.

AR 7182.  Therefore, according to the agency, the VA evaluated the realism of CSS's

price by comparing its total price to all the other offers and the IGCE.  This court and the

GAO have recognized that comparing the line items of different offers is a valid way to

determine price realism.  See Afghan, 90 Fed. Cl. at 358 (citing B–291725.3 et al., 2003

CPD ¶ 148, 2003 WL 21982424, at *6 (Comp. Gen. July 22, 2003) (price realism

analysis can be reasonably conducted by "evaluat[ing] each line item and the total price

for each proposal and compar[ing] them with [the] independent estimate and with other

offerors' prices").  The following chart, which was prepared as part of the price

negotiation with Rotech and CSS after all of the other bidders had been eliminated,

shows the initial price offers from the six offerors who submitted bids:

| Offeror | Base | Option Yr. 1 | Option Yr. 2 | Option Yr. 3 | Option Yr. 4 | Total Est. |
|---|---|---|---|---|---|---|
| [. . .] | | | | | | $58,439,752.80 |
| 2. Community Surgical Supply of Toms River, NJ | | | | | | $46,311.990.00 |
| [. . .] | | | [. . .] | | | $42,225,015.00 |
| [. . .] | | | | | | $42,453,360.00 |
| [. . .] | | | | | | $61,645,080.00 |
| 6. Rotech | | | | | | $62,796,886.80 |

AR 4247.  The VA also prepared an IGCE which estimated that the procurement was valued at $51,950,000 for five years.  Id. at 36.  Of six initial offers, CSS was the closest to the IGCE, and was the third lowest bid.  Rotech's initial bid of $62.9 million was the highest bid.  Where, as here, CSS's initial bid was also the closest to the IGCE, the VA properly recognized its price was realistic.  See Acad. Facilities Mgmt. v. United States, 87 Fed. Cl. 441, 467 (2009).

Rotech has not pointed to anything in the record or the language of the solicitation that would persuade the court that a more in-depth analysis is needed in this case.  See Info. Sciences Corp. v. United States, 73 Fed. Cl. 70, 102 (2006) (finding that comparing prices to each another and the government estimate, as well as reviewing the proposal for compliance with the solicitation and for mathematical accuracy, satisfied the agency's obligation to conduct a price realism analysis (quoting Matter of Burns & Roe Servs. Corp., B–296,355 2005 CPD ¶ 150, 2005 WL 2037620 (GAO July 27, 2005))).  Further, because the RFP in this case only requested all-inclusive pricing for each CLIN, the agency was limited in how closely it could examine the pricing methodology.  This also shows that the RFP did not contemplate a price realism analysis beyond comparing the bids and checking them for accuracy.[9]  The also court rejects Rotech's argument that eliminated proposals should not be used to determine realism.   As the GAO noted,

---

[9] Rotech has cited no case law, nor given this court any logical reason, to support its argument that CSS's offer was somehow per se unreasonable because it was approximately 11% lower than the Rotech's bid, and that CSS's bid for one of the CLINs was 33% lower than Rotech's bid for that same CLIN.  To the contrary, other cases have found that bids far lower than the government estimate could nonetheless be realistic.  See, e.g., Preferred Systems, 110 Fed. Cl. 48

> While the protester argues that the prices of the two lowest-priced proposals should not be considered valid points of comparison since these proposals were 'essentially deemed unrealistic' by the agency for failing to display an understanding of the Solicitation's requirements, there is no evidence in the record that the agency regarded these proposals as unrealistic.

AR 7194.  Further, the two bidders with lower bids than CSS, Lincare and First Community, each received a "Yellow" rating on the Technical factor, meaning that their proposals were technically acceptable.  Id. at 4267.  Therefore, the court finds that it was reasonable for the agency to use those bids as data points when considering the realism of CSS's bid.

Rotech further argues that the agency failed to document its price realism analysis, and, relying on Cohen Fin. Servs., Inc. v. United States, 110 Fed. Cl. 267 (2013), asserts that this is sufficient to set aside the award.  In Cohen, the agency stated that a price realism analysis was performed but gave no indication how the analysis was done.  Id. at 286-87.  The court found that "[w]ithout a description of the facts analyzed, and the reasoning that connects the facts with the conclusions, the court is not in a position to determine whether an agency exercised its discretion in a non-arbitrary manner.  Id. at 287.  However, this case differs from Cohen in several important respects.  Unlike the agency in Cohen, Ms. Baines explained the methodology behind her conclusion, and the record supports her assertion that she compared Rotech and CSS's proposals CLIN-by-CLIN to determine if anything was unbalanced.  See AR 4298-99 (spreadsheet

_____

(2013) (finding that a price was realistic despite the bid being 40% lower than the incumbent's bid and 60% lower than the IGCE).

documenting side-by-side comparisons of the two proposals).  Further, the solicitation in

Cohen specifically requested more information regarding pricing than the RFP in this

case, stating that "Labor rates that do not reflect a reasonable compensation for the skill

required in a labor category will be considered unrealistic."  Cohen, 110 Fed. Cl. at 271.

Therefore, the court rejected the agency's attempt to conduct the realism analysis in its

briefs by comparing the bid to outside data on labor rates when the record did not reflect

that the agency had already done so in the bidding process.  Id. at 287.  In this case, the

information that the agency relied on for its realism analysis is documented in the record.

Finally, Rotech argues that the fact that CSS agreed to open three additional

facilities in Maine without raising its price shows that CSS's price was unrealistic. The

court does not find this argument persuasive.  As an initial matter, Rotech's argument is a

bit perplexing in light of the fact that, during the evaluation process, Rotech lowered its

proposed total price by approximately $10 million without any corresponding cut in

services.  At oral argument, Rotech explained that the drop in price represented an

reduction in overhead and profit, but could not give any reason why CSS would not be

entitled to make similar types of cuts other than the fact that Rotech was the incumbent

and therefore knew the costs better.  Rotech also attempted to argue that cutting prices

while keeping services the same was not equivalent to adding services while keeping the

price the same.  This is a distinction without a difference.  Rotech has not given any

reason why the agency's decision to accept CSS's proposal including the increased

services was irrational.

In sum, after considering all of Rotech's arguments regarding price realism, the court finds that, based on the record, Rotech's argument that the VA's decision lacked a rational basis or was contrary to the solicitation fails.  In light of the fact that "this procurement involves a fixed price contract" and CSS is experienced in this field, along with the "discretion afforded to an agency's price realism analysis," the court finds that none of the alleged errors in the price realism analysis "warrant disrupting the [contract] award." Mil-Mar, 111 Fed. Cl. at 552 (quoting Ceres Envtl. Servs., Inc. v. United States, 97 Fed.Cl. 277, 307-08 (2011)).

### D.      Rotech's Motion to Supplement the Administrative Record is Denied

In addition to moving for judgment on the administrative record, Rotech has also moved to supplement the administrative record in this case to include two declarations which Rotech argues supports its argument that Rotech was prejudiced by the VA's failure to evaluate CSS's ability to complete the transition within forty-five days.  See Pl.'s Mot. to Supp. AR.  Rotech offers declarations from two of its employees, Tamara Tait, Vice President for Reimbursement Services, and Dania Vega, Quality Improvement Manager, concerning statements that the contracting officer for the solicitation, Lorrie A. Baines, made at Rotech's post-award debriefing.  According to the declarations, Ms. Baines told Rotech's employees that CSS did not have any locations in VISN 1, and that she expected the transition to take upwards of 90 days.  Ms. Baines further allegedly stated that the VS would extend Rotech's contract until the transition was completed.

Rotech argues that these statements reflect the agency's evaluation of CSS's proposal and "should properly be considered part of the AR to the extent that the VA

failed to document its determination." Mot. to Supp. AR 2. The government and CSS

counter that these declarations should not be a part of the administrative record because

even if the statements described in the declarations are true, they do not assist the court in

answering the question of whether the VA's decision to award the contract to CSS was

reasonable and lawful. Therefore, defendants argue the that declarations do not meet the

standard for supplementing the administrative record.

The court agrees with the government. "The focus of judicial review of agency

action remains the administrative record, which should be supplemented only if the

existing record is insufficient to permit meaningful review consistent with the APA."

Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009). This

court's review is limited to the record before the agency in order to "guard against courts

using new evidence to 'convert the "arbitrary and capricious" standard into effectively de

novo review.'" Id. at 1380 (quoting Murakami v. United States, 46 Fed. Cl. 731, 735

(2000). Therefore, "[t]he ability to supplement the administrative record before the

Claims Court is a limited one." Res-Care, Inc. v. United States, 735 F.3d 1384, 1391

(Fed. Cir. 2013) (citing Axiom, 564 F.3d at 1378). Supplementation is permitted "only

if the existing record is insufficient to permit meaningful review consistent with the

APA." Axiom, 564 F.3d at 1381.

To determine whether the existing record is sufficient, the court must consider

whether consideration of the proposed supplement is "necessary in order not 'to frustrate

effective judicial review.'" Id. (citing Camp v. Pitts, 411 U.S. 138, 142-43 (1973)).

Supplementation is unnecessary when the documents a litigant seeks to add to the record

do not shed light on an issue that the court must consider in order to decide the case.  See Allphin v. United States, 758 F.3d 1336, 1344 (Fed. Cir. 2014) (finding that because a proposed supplement was only relevant to a nonjusticiable claim, the documents could not be added to the administrative record).  Because the court has already found that the solicitation did not require the VA to specifically find that CSS could complete the transition within forty-five days, the declarations are not useful to further support Rotech's argument that the VA failed to make such a determination.  Rotech itself argues that it is merely attempting to complete the record, and "rather than attempt[ing] to add anything new," the declarations are "documenting the VA's own conclusions."  Pl.'s Mot. to Supp. 9.  Therefore, it can hardly be said that that supplementing the record is "necessary in order not to frustrate effective judicial review."  Axiom, 564 F.3d at 1381.

Rotech argues that that supplementation is permitted when "the record raises serious questions concerning the rationality of the award decision" or if the information is "probative of potential agency bias or bad faith."  Mot. to Supp. AR 7 (quoting Arkray USA, Inc. v. United States, 2014 U.S. Claims LEXIS 571, *14 (Fed. Cl. June 26, 2014) (additional citations omitted)).  But, as discussed above, the record is sufficient to show that the VA conducted an evaluation of CSS's transition plan in conformity with the solicitation, and that the agency's decision to give CSS a "Blue" rating on the Technical factor was reasonable.  Nor do the declarations give any indication that the agency acted in bad faith.  Therefore, plaintiff's motion to supplement the is **DENIED.**

**IV.     CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Judgment on the

Administrative Record is **DENIED.**  Plaintiff's Motion to Supplement the Administrative

Record is **DENIED**.  The Government's Motion for Judgment on the Administrative

Record is **GRANTED.**  Defendant-Intervener CSS's Motion for Judgment on the

Administrative Record is **GRANTED.**  The clerk is instructed to enter judgment

accordingly.  No costs.

**IT IS SO ORDERED.**


s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge